IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 15 C 5607 |
| ) | |
| v. ) | Magistrate Judge Sidney I. Schenkier |
| ) | |
| ROBERT ROMERO, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER[1]

On June 24, 2015, plaintiff, the United States of America (the "United States" or the "government"), filed a two-count complaint against defendant, Robert Romero, alleging that Mr. Romero owes principal and interest on two promissory notes he had executed pursuant to the Higher Education Act ("HEA"), as amended, 20 U.S.C. 1071, *et seq.* (doc. # 1: Compl.). Plaintiff has filed a motion for summary judgment on its claims (doc. # 23: Pl.'s Mot. for Summ. J.). Mr. Romero filed a cross motion for summary judgment alleging that plaintiff's claims are barred by various affirmative defenses (doc. # 36: Def.'s Mot. for Summ. J). For the reasons that follow, the Court grants plaintiff's motion and denies Mr. Romero's motion.

### I.

The legal standards governing motions for summary judgment are well-established. Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and he or she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

---

[1] On August 5, 2016, the parties consented for this case to be assigned to this Court for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) (doc. # 20).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, we "construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen'l Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013).

"[A] factual dispute is 'genuine' for summary judgment purposes only when there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Anderson*, 477 U.S. at 249). "When opposing a properly supported motion for summary judgment, the non-moving party must 'cit[e] to particular parts of materials in the record' or 'show[ ] that the materials cited do not establish the absence . . . of a genuine dispute.'" *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)). The non-movant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168-69 (7th Cir. 2013) (internal citations and quotations omitted). "Metaphysical doubt as to the material facts is not enough to overcome summary judgment, and a party may not rest upon the mere allegations of his pleading." *Flint v. City of Belvidere*, 791 F.3d 764, 769 (7th Cir. 2015) (internal citations omitted). "[S]urviving summary judgment requires evidence, not assumptions;" "mere speculation or conjecture" is insufficient to create a factual dispute to defeat summary judgment. *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 768-69 (7th Cir. 2015) (internal citations and quotations omitted).

II.

In support of its motion for summary judgment, plaintiff submitted a statement of facts and attached copies of two promissory notes. The government states that the copies show that Mr. Romero signed the first promissory note on September 5, 1998 ("Note 1") and the second

2

promissory note on August 13, 1999 ("Note 2") (doc. # 27: Pl.'s Stmt. of Facts ("PSOF"), Ex. D: Note 1; PSOF, Ex. F: Note 2).[2] In addition, plaintiff submitted certificates of indebtedness for each note, which provide a summary of the history of these two student loans.

In the certificate of indebtedness for Note 1, Philippe Guillon, a loan analyst for the U.S. Department of Education (the "Department"), certified the following under the penalty of perjury: (a) on September 5, 1998, Mr. Romero executed Note 1 to secure a loan of $18,500.00 from National City Bank;[3] (b) the loan was disbursed in separate increments of $10,000.00 and $8,500.00 between September and December 18, 1998; (c) the loan obligation was guaranteed by the Pennsylvania Higher Education Assistance Agency ("Pennsylvania HEAA"), and then reinsured by the Department; (d) the holder (National City Bank) demanded payment, but Mr. Romero paid nothing and defaulted on the obligation on March 30, 2002; (e) due to this default, the guarantor (Pennsylvania HEAA) paid the total amount owed to the holder -- $21,643.66 (which included accrued interest); (f) the Department reimbursed Pennsylvania HEAA; (g) the guarantor attempted, but was unable, to collect this debt from Mr. Romero; (h) on November 25, 2009, the guarantor assigned its right and title to the loan to the Department; (i) no payments

---

[2]Plaintiff misstates the date of execution of Note 2, which states that it was signed on August 13, 1999, not September 5, 1998, as the government says (PSOF at ¶ 9). In addition, plaintiff states that Mr. Romero received $9,500.00 pursuant to Note 2, when the certificate of indebtedness for Note 2 states that Mr. Romero received $10,000.00 under Note 2 (*compare* PSOF at ¶ 11, *with* PSOF, Ex E: Note 2 Cert. of Indebt.). These misstatements are obviously scrivener's errors which are easily corrected by looking at Note 2 and its certificate of indebtedness, which plaintiff attached as exhibits to its statement of undisputed material facts. *See Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 605-06 (7th Cir. 2000) (disagreeing with non-moving party that "one misstatement or typographical error is enough to preclude summary judgment" because "[w]e see it for what it is, either a misstatement or a typographical error"); *see also United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 509-10 (7th Cir. 2010) (finding that where the government made obviously inadvertent error in its complaint and the defendant clearly understood the thrust of the government's argument despite the error, it was unnecessary for the government to amend its complaint); *Buchanan v. McCann*, No. 08-CV-7063, 2011 WL 4837279, at *1 n.3 (N.D. Ill. Oct. 12, 2011) (holding that typographical error in date listed in statement of material facts did not create a genuine factual dispute where other evidence was cited which provided the correct date of the incident).

[3]The parties use the terms "sign" and "execute" interchangeably with regard to the notes. *See, e.g., Polycon Indus., Inc. v. N.L.R.B.*, 821 F.3d 905, 906 (7th Cir. 2016) (noting that "execut[ing]" and "sign[ing]" a written contract had the same meaning).

3

were received from Mr. Romero; (j) as of June 22, 2015, Mr. Romero owed the Department $31,187.17, comprised of the $21,643.66 the Department had paid the guarantor plus $9,543.51 in interest; and (k) interest continued to accrue on the $31,187.17 thereafter, at an annual rate of 2.33% and daily rate of $1.38 through June 30, 2015 (PSOF, Ex. C: Cert. of Indebt. for Note 1).

In the certificate of indebtedness for Note 2, Mr. Guillon certified the following under the penalty of perjury: (a) on August 13, 1999, Mr. Romero executed Note 2 to secure a loan of $10,000.00 from National City Bank; (b) the loan was disbursed in separate payments of $8,500.00 and $1,500.00 on September 1, 1999; (c) the loan obligation was guaranteed by Pennsylvania HEAA, and then reinsured by the Department; (d) the holder (National City Bank) demanded payment, but Mr. Romero paid nothing and defaulted on the obligation on March 30, 2002; (e) due to this default, the guarantor (Pennsylvania HEAA) paid the total amount owed to the holder -- $10,814.84 (which included accrued interest); (f) the Department reimbursed Pennsylvania HEAA; (g) the guarantor attempted, but was unable, to collect this debt from Mr. Romero; (h) on November 25, 2009, the guarantor assigned its right and title to the loan to the Department; (i) no payments were received from Mr. Romero; (j) as of June 22, 2015, Mr. Romero owed the United States $15,583.45, comprised of the $10,814.84 the Department had paid the guarantor plus $4,768.61 in interest; and (k) interest continued to accrue on the $15,583.45 at an annual rate of 2.33% and daily rate of $0.69 through June 30, 2015 (PSOF, Ex. E: Cert. of Indebt. for Note 2).

### III.

Before we proceed to the merits of the government's claims, we address whether Mr. Romero has raised any genuinely disputed issues of material fact in response to plaintiff's motion. In his response to plaintiff's statement of undisputed facts, Mr. Romero purports to deny

each of plaintiff's facts except for the fact of his Illinois citizenship and the date plaintiff filed its complaint. However, Mr. Romero does not support his denials with citations to materials in the record, affidavits, admissions, or any other evidence upon which a jury could properly proceed to find a verdict in his favor.

Local Rule 56.1(b)(3)(C) states that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). A party opposing a motion for summary judgment must identify the material facts in dispute and cite to admissible evidence controverting the moving party's evidence. *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 359 (7th Cir. 2009). The Seventh Circuit has "repeatedly held that the district court is within its discretion to strictly enforce compliance with its local rules regarding summary-judgment motions," including by deeming a material fact admitted if it is not properly controverted. *Id.* at 360. "[R]epeatedly and improperly characteriz[ing] facts as disputed without citing evidence that directly contradicts [the other party's] assertions" does not "demonstrate a genuine fact dispute." *Senske v. Sybase, Inc.*, 588 F.3d 501, 504 n.1 (7th Cir. 2009). Nor do "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000), or "improper denials and legal argument," *Smith v. Lamz et al.*, 321 F.3d 680, 683 (7th Cir. 2003), create a genuine dispute of material facts. Mr. Romero's responses to plaintiff's statement of facts fall into these categories.

### A.

Mr. Romero contends that he "has no independent recollection of executing" Note 1 or receiving $18,500.00 under Note 1, and, therefore, that he "lacks knowledge or information sufficient to form a belief" and on that basis denies plaintiff's assertions (doc. # 34: Def.'s Resp.

to PSOF at ¶¶ 3, 5). A lack of recollection by itself, however, is not sufficient to create a genuine issue of material fact. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002) (plaintiff's affidavit asserting that she did not remember seeing or receiving a brochure did not raise a genuine issue that the brochure was distributed to her in light of the uncontroverted affidavits of two other individuals that indicated the brochure was sent and presumably received); *see also Hemphill v. State Farm Mut. Auto Ins. Co.*, 805 F.3d 535, 541 (5th Cir. 2015) ("Lack of memory by itself is insufficient to create a genuine issue of material fact"); *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056 (7th Cir. 2011) (holding that an alleged lack of recollection was "inconclusive," and "cannot by itself create a genuine factual dispute"); *Hudson v. C.P. Rail Sys.*, 24 F. App'x 610, 613 (7th Cir. 2001) (party's "bare assertion" that he "does not recall" making inappropriate comments did not create a genuine issue of material fact); *FDIC v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 205 F.3d 66, 75 (2d Cir. 2000) ("vague denials and memory lapses . . . do not create genuine issues of material fact").

Thus, Mr. Romero's bare assertion that he does not remember signing Note 1 and receiving the $18,500.00 specified in the note does not raise a genuine dispute as to whether he executed the note and received the funds. Nor is Mr. Romero's lack of "independent recollection" of signing the document sufficient to raise a question as to the authenticity of the copy of Note 1 that plaintiff submitted. *See Brown v. Chicago Transit Auth. Ret. Plan*, 197 F. App'x 475, 481 (7th Cir. 2006) (holding that the plaintiff's affidavit that she did not remember seeing documents was not enough to create a disputed issue of material fact as to the documents' authenticity). Therefore, we deem admitted plaintiff's assertions that Mr. Romero executed Note 1, that the note is authentic, and that Mr. Romero received $18,500.00 pursuant to Note 1.

6

**B.**

Regarding Note 2, Mr. Romero simply denies, with no explanation or citation to the record, that he executed Note 2 on or about September 5, 1998 (Def.'s Resp. to PSOF at ¶ 9). There is no doubt that plaintiff's statement of facts misstated the date that Note 2 was executed. The copy of Note 2 that plaintiff submitted shows that it was signed on August 13, 1999 (PSOF, Ex F: Note 2). As we noted above, we find that this error was a mere technicality. "But rather than point out this inadvertent error and note that the statement is otherwise undisputed, defendants dispute the statement, which serves only to waste the court's, and the litigants', time." *Ezell v. Bass*, No. 09 C 6908, 2012 WL 379744, at *2 n.3 (N.D. Ill. Feb. 1, 2012). Mr. Romero's summary denial -- without any supporting citations to materials in the record -- does not create a genuine issue of material fact as to the authenticity or accuracy of Note 2. *See, e.g., Horton v. Country Mortg. Servs., Inc.*, No. 07 C 6530, 2010 WL 55902, at *3-4 (N.D. Ill. Jan. 4, 2010) (holding that there was no genuine issue as to authenticity of signatures where plaintiff did not cite any evidence to support her denial of authenticity); *Fireman's Fund Ins. Co. v. Amstek Metal, LLC*, No. 07 C 647, 2008 WL 4066096, at *3 n.3 (N.D. Ill. Aug. 27, 2008) (disregarding the plaintiff's denial of the authenticity of documents because the plaintiff did not provide any documentation contradicting or undermining their authenticity). We therefore deem admitted plaintiff's assertions that Mr. Romero executed Note 2, that the note is authentic, and that Mr. Romero received $10,000.00 pursuant to the note.

**C.**

Mr. Romero "denies" every other statement of fact plaintiff asserts (except for his Illinois citizenship and the date plaintiff filed its complaint), on the basis that they are conclusions of law

and/or fact.[4] Mr. Romero's responses constitute the sort of "generalized self-serving legal conclusions, rather than particularized statements of fact," that are insufficient to create a genuine issue of material fact. *Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001); *see also Houston v. Sargent Jones & Officer Simmons*, No. 14 C 9462, 2015 WL 9304489, at *2 (N.D. Ill. Dec. 22, 2015) (a party "cannot create genuine issues of material fact by relying upon legal arguments, conclusions or suppositions . . . which do not constitute 'facts'"); *Boyce v. Johnson*, No. 13 C 6832, 2015 WL 7351679, at *2 (N.D. Ill. Nov. 20, 2015) (same). As this Court has emphasized, "[i]n determining what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements." *Sansone v. Kormex Metal Craft, Inc.*, No. 14 C 8418, 2016 WL 1529900, at *1 (N.D. Ill. Apr. 14, 2016) (collecting cases). Mr. Romero offers no evidence or citation in support of his summary claims that plaintiff's statements of undisputed facts amount to conclusions of law or fact. Rather, Mr. Romero relied on "evasive denials" and "legal argument" that do not create a genuine dispute of material facts. *Bordelon*, 233 F.3d at 529; *Smith*, 321 F.3d at 683.

Moreover, we disagree that plaintiff's assertions constitute legal or factual conclusions. As we explain further below, most of plaintiff's assertions are properly asserted statements of undisputed facts that support the government's *prima facie* case.

### IV.

Although the Seventh Circuit has not laid out the elements of a *prima facie* case to recover on a promissory note for a federally-insured student loan, the parties do not dispute that the standard used by other courts of appeals should apply here. The Fifth and Sixth Circuits have

---

[4] For example, in his response to paragraph 10 of plaintiff's statement of facts, which states that "Phillipe Guillon, a loan analyst with the U.S. Department of Education, completed a certificate of indebtedness for Note 2 on July 22, 2015," Mr. Romero states that "[t]he effect thereof of this document is a legal conclusion as well as a conclusion of fact which are denied" (Def.'s Resp. to PSOF, at ¶ 10). This response is typical of Mr. Romero's responses to plaintiff's statement of facts.

held that to recover on a promissory note, the government must show "(1) the defendant signed it, (2) the government is the present owner or holder, and (3) the note is in default." *United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Ninth and Eleventh Circuits have cited this standard with approval, and at least two courts in this district have applied this standard. *See United States v. Falcon*, 805 F.3d 873, 876 (9th Cir. 2015); *United States v. Romero*, 562 F. App'x 943, 948 (11th Cir. 2014);[5] *United States v. Swanson*, No. 13 C 3123, 2015 WL 222366, at *1 (N.D. Ill. Jan. 14, 2015); *United States v. Tartt*, No. 12 C 1416, 2013 WL 2151543, at *3 (N.D. Ill. May 16, 2013).

The government asserts it has established a *prima facie* case that it is entitled to recover on Notes 1 and 2, and that Mr. Romero has not effectively disputed any of the government's asserted undisputed material facts. Therefore, plaintiff argues that it is entitled to summary judgment on its claims. We address the elements of the government's *prima facie* case below.

### A.

With respect to the first element of the government's *prima facie* case -- that Mr. Romero signed (or executed) Notes 1 and 2 -- we have already deemed admitted the relevant facts. Those facts establish that Mr. Romero executed Note 1, which was attached to plaintiff's statement of facts as Exhibit D, and that he received $18,500.00 under Note 1 (PSOF, at ¶¶ 3, 5). We also deemed admitted plaintiff's assertion that Mr. Romero executed Note 2, attached to plaintiff's statement of facts as Exhibit F, and that he received $10,000.00 pursuant to that note (*Id.*, at ¶ 9).

Nevertheless, Mr. Romero contends that plaintiff failed to meet its burden of proving that he executed Notes 1 and 2 because the government was required to produce originals of the notes, but only produced copies (doc. # 33: Def.'s Resp. to Pl.'s Mot. for Summ. J. at 1-2). This

---

[5]The defendant in the Eleventh Circuit case is not the same Mr. Romero as the defendant in the instant case.

9

argument is a non-starter, as it is well-settled that "[a] duplicate is admissible to the same extent as the original unless a genuine issue is raised about the original's authenticity." Fed. R. Evid. 1003. In *Petroff-Kline*, the Sixth Circuit held that copies of promissory notes submitted by the government were sufficient to establish that the defendant signed the notes where the defendant's only response was "an amorphous disclaimer that she does not recognize the notes containing that signature." *Petroff-Kline*, 557 F.3d at 291. *See also United States v. Gorski*, 585 F. App'x 929, 932 (9th Cir. 2014) (because the defendant offered no evidence that he did not receive the underlying loans, or that any payments were not properly credited, his "amorphous claims that he might not have signed the underlying notes and that some payments or charges might not be properly documented" were insufficient to rebut the government's *prima facie* case). Similarly, Mr. Romero's "amorphous disclaimer" that he has "no independent recollection" of executing Note 1 does not raise a genuine issue as to its authenticity. Likewise, Mr. Romero's summary denial of plaintiff's statement that he executed Note 2 does not raise a genuine issue as to the authenticity of Note 2.[6]

Mr. Romero also argues that the Notes are inadmissible hearsay (Def.'s Resp. at 1-3). This argument, too, is incorrect. "Statements that constitute verbal acts (*e.g.*, words of contract or slander) are not hearsay because they are not offered for their truth." *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007). This includes promissory notes, which are signed instruments that have "independent legal significance." *Levy v. McGill*, 137 F. App'x 613, 616 (5th Cir. 2004) (quoting *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994)). *See also Florence Nightingale Nursing Servs., Inc. v. Paul Revere Life Ins. Co.*, No. 94 C

---

[6]In his response brief, Mr. Romero "demands inspection" of the original notes and states that they were not available for inspection (Def.'s Resp. at 6). However, the government offered just that in its opening brief, stating that "the original notes are available for inspection by Romero's attorney at his convenience if he needs to refresh his recollection" (doc. # 24: Pl.'s Mem. in Supp. of Summ. J. at 3-4).

1757, 1995 WL 422863, at *4 (1st Cir. July 19, 1995) (same); *Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885, 917 (N.D. Ill. 2004) (same); *see also Ryan v. State*, No. 91 C 3725, 1999 WL 59982, at *3 (N.D. Ill. Feb. 3, 1999), *aff'd sub nom. Illinois ex rel. Ryan v. Brown*, 227 F.3d 1042 (7th Cir. 2000).[7]

Therefore, we conclude that plaintiff has established the first element of its *prima facie* case, that Mr. Romero executed Note 1 and Note 2.

### B.

Next, we find that plaintiff has established the second and third elements of its *prima facie* case: that the government is the present holder of Notes 1 and 2, and that Notes 1 and 2 are in default. Plaintiff asserts that the certificates of indebtedness for Notes 1 and 2 establish that (a) Mr. Romero received student loans that were guaranteed by the Pennsylvania HEAA and reinsured by the Department; (b) the guarantor paid the claims to the original holder of the notes and was reimbursed by the Department; (c) the guarantor assigned the loans to the Department, making the United States the current holder of the notes; and (c) Mr. Romero defaulted on both notes by failing to make any payment on them (doc. # 24: Pl.'s Mem. in Supp. of Summ. J. at 4; PSOF, Ex. C: Cert. of Indebt. for Note 1; PSOF, Ex. E: Cert. of Indebt. for Note 2).

Mr. Romero does not dispute that the certificates of indebtedness show that the government is the current holder of the notes, or that the notes are in default. However, he argues that the certificates of indebtedness are inadmissible hearsay that the government may not use to

---

[7]Mr. Romero also suggests that Notes 1 and 2 are incomplete because they state that "Additional Note provisions follow," but additional note provisions were not attached (Def.'s Resp. to PSOF at ¶ 11; doc. # 35: Def.'s L.R. 56.1(b)(3)(C) Stmt. of Add'l Material Facts ("DSOF") at ¶¶ 1-3). The government argues that despite this omission, the notes contain all of the essential elements needed to demonstrate that Mr. Romero executed them (*see* doc. # 41: Pl.'s Resp. to DSOF at ¶¶ 1-3). Mr. Romero does not attach the "additional note provisions," suggest what they said, or explain how, if they exist, those provisions could rebut the evidence that plaintiff presents in its statement of facts. In the absence of any such countervailing evidence or citation, Mr. Romero's contention does not raise a dispute as to the authenticity of the notes.

support its *prima facie* case (Def.'s Resp. at 4-5). The government responds that the certificates of indebtedness are admissible under the public records exception to the hearsay rule, Federal Rule of Evidence 803(8), and that they are sufficient to establish the second and third prongs of its *prima facie* case against Mr. Romero (doc. # 40: Pl.'s Reply at 5).

Rule 803(8) states, in relevant part, that a record or statement of a public office is exempted from the hearsay rule if it sets out "the office's activities" or "factual findings from a legally authorized investigation," and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). The few district court cases that have specifically considered the question have held that certificates of indebtedness fall within the public records exception to hearsay. *See, e.g., United States v. Wright*, 850 F. Supp. 965, 967 (D. Utah 1993); *United States v. Foreman*, No. 614CV1965ORL40DAB, 2016 WL 1402885, at *4 (M.D. Fla. Mar. 21, 2016); *United States v. Badgett*, No. CV1502350BROJPRX, 2016 WL 5886916, at *2 (C.D. Cal. Feb. 3, 2016). Other district court decisions -- including ones in this district -- have simply assumed the admissibility of certificates of indebtedness and relied on them to find that the government proved its *prima facie* case of default. *See Tartt*, 2013 WL 2151543, at *3; *Swanson*, 2015 WL 222366, at *1. And, both the Sixth and the Ninth Circuits have affirmed district courts' opinions granting summary judgment in favor of the government where the government established a *prima facie* case through certificates of indebtedness that showed that the defendant student loan borrower was in default on notes held by the United States. *See United States v. Falcon*, 805 F.3d 873, 876 (9th Cir. 2015); *see also Petroff-Kline*, 557 F.3d at 290. Defendant has cited no case -- and we have found none -- that finds a certificate of indebtedness inadmissible or insufficient to establish the elements of the *prima facie* case.

We agree with the weight of the case law that certificates of indebtedness are admissible under the public records exception to the hearsay rule and may be used to establish the government's *prima facie* case that it is entitled to recover on a student loan. The certificates of indebtedness are summaries of Mr. Romero's history of student loan debt culled from the records of the Department by a Department loan analyst. Notes 1 and 2 adequately show that the government is the current holder of the notes, and that Mr. Romero failed to make the payments he owed on the notes. Therefore, we find that plaintiff has established a *prima facie* case that Mr. Romero defaulted on Notes 1 and 2.

### C.

Before we continue to Mr. Romero's motion for summary judgment, we address his suggestion that we defer ruling on plaintiff's motion because he has not assembled the evidence necessary to contest that motion (Def.'s Resp. at 7). Mr. Romero contends that "[t]he government elected to forego both oral and written discovery, which would allow the parties the privilege of discovery to obtain all evidence related to the material facts at issue" (*Id.*).

Mr. Romero's contention is without merit. To begin with, he contends that this Court should defer ruling pursuant to Federal Rule of Civil Procedure 56(d), but that rule requires that "a nonmovant show[] by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment. Fed. R. Civ. P. 56(d). However, Mr. Romero does not support his request that we defer ruling with an affidavit or declaration. Moreover, we find no basis to criticize the government for declining to pursue discovery it determined was unnecessary to prove its case. The government's choice did not tie the hands of Mr. Romero, who was free to pursue discovery if he wished. If Mr. Romero lacks evidence that he believes could have been obtained in discovery, he has no one to blame but

himself. He had plenty of time to pursue it during the more than 18 months this case has been pending.

V.

We next address Mr. Romero's cross-motion for summary judgment. In his motion, Mr. Romero contends that the government's claims are barred by *res judicata*, a failure to mitigate, and laches (doc. # 36: Def.'s Mot. for Summ. J. at 1). These arguments are each without merit.

A.

Mr. Romero argues that the doctrine of *res judicata* bars plaintiff's current lawsuit because the notes at issue here were not included in a separate lawsuit plaintiff brought in federal court on September 20, 2014 against Mr. Romero seeking recovery on three other promissory notes, executed in 1995, 1996 and 1997 (Romero's Mot. at 1). On June 29, 2015, those claims were resolved by Magistrate Judge Daniel Martin in an agreed Judgment Order in favor of the United States and against Mr. Romero in the amount of $109,104.73 plus costs (14 C 7643, doc. # 54).

Because the earlier judgment was rendered by a federal court, the federal law of claim preclusion, or *res judicata*, applies here. *See Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014). "*Res judicata* blocks a second lawsuit if there is (1) an identity of the parties in the two suits; (2) a final judgment on the merits in the first; and (3) an identity of the causes of action." *Barr v. Bd. of Trustees of W. Illinois Univ.*, 796 F.3d 837, 840 (7th Cir. 2015) (internal citations and quotations omitted). Plaintiff argues that *res judicata* does not apply here, because there is no identity of the causes of action in the government's 2014 lawsuit and the current one. We agree with plaintiff.

"[T]he test for an identity of the causes of action is whether the claims arise out of the same set of operative facts or the same transaction. Even if the two claims are based on different legal theories, the two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations." *Bernstein v. Bankert*, 733 F.3d 190, 226-27 (7th Cir. 2013) (internal quotations and citations omitted). *Res judicata* "require[s] the joinder of all legal challenges to a wrong, and all claims for relief arising out of those events, without compelling the joinder of claims arising from separate wrongs. . . . [I]f the supposedly wrongful events are separated by time and function, multiple suits are permissible . . ." *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007).

While the lawsuit filed by the government in 2014 also sought recovery from Mr. Romero for default on student loans, there is no identity of action with the present case. Although the legal theory is the same, the prior case was based on different loans than those now at issue. These were separate occurrences or transactions from the two loans upon which the government now seeks recovery for default. Therefore, *res judicata* does not apply to bar the government's claims.

### B.

Mr. Romero also contends that the government "failed to mitigate its damages, in waiting thirteen (13) years to prosecute its claims" (Romero's Mot. at 2). However, as we have explained, the certificates of indebtedness show that the holder and the guarantor of the loan did try to collect the debts Mr. Romero owed on Notes 1 and 2. Mr. Romero provides no citation or evidence to dispute this. We will not punish plaintiff for first attempting to collect the debt without involving the courts. It was Mr. Romero's continued failure to pay his debt that led to the government ultimately filing suit in federal court.

C.

Mr. Romero argues that the government's claims are barred by laches because the government unreasonably and prejudicially delayed filing its claims against him (doc. # 37: Romero's Mem. in Supp. of Summ. J. at 4). This argument is without merit.

The 1991 Amendment to the HEA, pursuant to which the loans at issue were made, "sweepingly eliminated time limitations" for actions taken for the repayment of various student loans, including the loans at issue here. *Lockhart v. United States*, 546 U.S. 142, 144-45 (2005) (citing 20 U.S.C. § 1091a(a)(2)). Specifically, Section 1091a states that "no limitation shall terminate the period within which suit may be filed, a judgment may be enforced, or an offset, garnishment or other action initiated or taken . . . for the repayment of the amount due from a borrower on a loan made under this subchapter." 20 U.S.C. § 1091a(a)(2)(D) (2009).

Three courts of appeals have held that the 1991 Amendment eliminated all limitations defenses for collection of student loan debts, including the equitable defenses of laches and lack of due diligence. *See United States v. Tuerk*, 317 F. App'x 251, 252-53 (3d Cir. 2009); *Lee v. Spellings*, 447 F.3d 1087, 1090 (8th Cir. 2006); *United States v. Lawrence*, 276 F.3d 193, 196 (5th Cir. 2001). The Sixth Circuit recognized that some courts have found that a laches argument is not cognizable in student loan enforcement cases, but declined to weigh in on the issue, instead rejecting the defendant's laches defense on the merits. *Proctor v. U.S. Dep't of Educ.*, 196 F. App'x 345, 349 (6th Cir. 2006). Although the Seventh Circuit has not directly addressed whether laches may be a defense to government actions on student loan debt, at least one court in this district has held that laches is not a defense. *See United States v. Smith*, No. 98 C 2960, 2003 WL 21994027, at *1 (N.D. Ill. Aug. 18, 2003) (explaining that "[c]laims of laches as a defense to student loan enforcement have been repeatedly raised and rejected" since the enactment of the

1991 Amendment). We agree with this reading of the impact of the 1991 Amendment on the HEA, and hold that laches is not a viable theory of defense in this case.

Even if laches remained a viable theory of defense in student loan cases, the doctrine would not apply in this case. "Laches arises when an unwarranted delay in bringing a suit or otherwise pressing a claim produces prejudice" to the adverse party. *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1060 (7th Cir. 2016). Mr. Romero has not shown that the government inexcusably delayed asserting its claims or that he was prejudiced by any delay. As did the Sixth Circuit in *Proctor*, we conclude here that the government has offered sufficient evidence that collection activities were taken against Mr. Romero during the history of his student loans, and, thus, Mr. Romero has not shown that the government "engaged in dilatory tactics or otherwise unduly delayed seeking legal redress." *Proctor*, 196 F. App'x at 349.

Moreover, Mr. Romero has not shown that he was prejudiced by the passage of years due to the interest that has accrued on his loans. The interest continued to accrue because Mr. Romero did not repay his loan debt, not because the government unreasonably delayed suit or failed to mitigate damages. Accordingly, we hold that laches would not bar plaintiff's attempt to recover on the notes.[8]

---

[8] In his answer to the complaint, Mr. Romero asserted several other affirmative defenses that he did not raise either in his response to the government's summary judgment motion or in his own motion for summary judgment: specifically, set-off, statute of limitations, and collateral estoppel (doc. # 21: Def.'s Amended Affirm. Defenses). The Court does not consider unsupported, undeveloped or cursory arguments. *See, e.g., Hall v. Flannery*, 840 F.3d 922, 927 (7th Cir. 2016). Nevertheless, we note in passing that these affirmative defenses are in any event without merit: (1) Mr. Romero's collateral estoppel defense repeats his *res judicata* argument, and for similar reasons -- different issues of law and fact -- the defense does not apply here; (2) statute of limitations defenses to student loan cases were abrogated by the 1991 Amendment to the HEA, and this abrogation has been upheld as constitutional, *see, e.g., United States v. Falcon*, 805 F.3d 873, 875 (9th Cir. 2015); and (3) no formal accounting of the notes to determine offsets is necessary because the certificates of indebtedness and copies of the notes adequately account for the balance and interest Mr. Romero owes, and Mr. Romero does not contest the government's calculation of the amounts that he owes under the notes.

## VI.

"Suits to enforce promissory notes are especially appropriate for disposition by summary judgment." *Bankers Trust Co. of California, NA v. Boydell*, 46 F. App'x 731 (5th Cir. 2002). While Mr. Romero argues that certain elements necessary to prove the government's case are issues for the trier of fact -- such as whether the United States is the present holder of the notes (*see* Def.'s Resp. to PSOF, at ¶¶ 8, 15) -- in this case, there is no disputed issue of material fact left for the trier of fact to determine. The government has presented a *prima facie* case that Mr. Romero defaulted on the two student loan notes at issue in this case, and Mr. Romero did not offer evidence that places into genuine dispute any of the elements of the government's *prima facie* case; nor are the defenses he raises in his cross-motion viable. Accordingly, summary judgment for the government is warranted.

Mr. Romero does not offer evidence to dispute the amount of principal plus interest that the government alleges he owes (Def.'s Resp. at 4-5). The government requests that judgment be entered against Mr. Romero for $47,538.33, plus interest at the rate of 2.33% from June 27, 2016, to the date of judgment, plus post-judgment interest and costs of bringing the action (Pl.'s Mem. at 5). In support of these numbers, the government attached a declaration from its supervisory paralegal, Jennifer Bielanski, dated June 28, 2016 (PSOF, Ex. G: Bielanski's Decl.). Ms. Bielanski attested that she reviewed the relevant records in this case and that as of June 27, 2016, Mr. Romero owed principal in the amount of $32,458.50 and prejudgment interest of $15,079.83, for a total of $47,538.33 (*Id.*). She further stated that interest on the amount owed in Note 1 would accrue at the rate of $1.38 per day from June 27, 2016, to the date of judgment, and interest on Note 2's principal would accrue at the rate of $0.69 per day from June 27, 2016, to the date of judgment (*Id.*).

As Mr. Romero has not raised any evidence to place into genuine dispute the accuracy of these numbers, we adopt the government's numbers. Between the date of this opinion and June 27, 2016, 192 days have elapsed. At the rate of $1.38 per day, Mr. Romero owes an additional $264.96 in interest on Note 1, and at the rate of $0.69 per day, Mr. Romero owes an additional $132.48 in interest on Note 2, bringing the total amount Mr. Romero owes to $47,935.77. We thus enter judgment for plaintiff and against the defendant in this amount.

## CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion for summary judgment (doc. # 23) and denies Mr. Romero's motion (doc. # 36). We enter judgment for plaintiff and against defendant in the amount of $47,935.77. Plaintiff has until January 19, 2017, to file a statement regarding its costs of bringing this action. The case is terminated.

ENTER:

/s/ Sidney I. Schenkier

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: January 5, 2017**